### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| DAVID DICREASE, individually and on behalf of all others similarly situated, | : |
| | : |
| | : NO. _____ |
| Plaintiff, | : |
| v. | : |
| | : |
| JOSEPH LISTENGART, EDWARD H. AUSTIN, JR., CHARLES W. BATTEY, STEWART A. BLISS, TED A. GARDNER, WILLIAM J. HYBL, MICHAEL C. MORGAN, EDWARD RANDALL, III, FAYEZ S. SAROFIM, JAMES M. STANFORD, H.A. TRUE, III, DOUGLAS W.G. WHITEHEAD, RICHARD D. KINDER, KINDER MORGAN, INC., KINDER MORGAN FIDUCIARY COMMITTEE, JOHN DOES 1-30 | : **COMPLAINT** |
| Defendants. | : |

Plaintiff, by his attorneys, on behalf of himself, the Kinder Morgan, Inc. Savings Plan (the "Plan") and all participants and beneficiaries of the Plan (the "Participants"), alleges upon information and belief the following:

## I. NATURE OF THE ACTION AND SUMMARY OF CLAIMS

1.     Plaintiff brings this action against Kinder Morgan, Inc. ("Kinder Morgan" or the "Company") and others, on behalf of the Plan for Plan-wide relief and on behalf of himself and all Participants for whose individual account and benefit the Plan invested in, and held shares of, the Kinder Morgan, Inc. Common Stock Fund (the "Fund") and/or the common stock of Kinder Morgan.

2.      Plaintiff brings this action on behalf of both the Plan and its Participants pursuant to § 502(a)(2) and (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2) and (3).  As alleged herein, Defendants breached their fiduciary duties owed to the Plan and its Participants, including those fiduciary duties set forth in ERISA § 404, 29 U.S.C. § 1104, and Department of Labor Regulations, 29 C.F.R. § 2550.  As a result of these breaches, Defendants are personally liable to the Plan for all losses resulting from each such breach of fiduciary duty, as well as personally liable to return any amounts by which they were unjustly enriched at the expense of the Plan and its Participants as the result of the acts and omissions complained of herein.

3.      Plaintiff's claims arise out of the proposed buy-out of all the outstanding shares of Kinder Morgan by Richard D. Kinder ("Kinder") and the Company's top management for inadequate consideration.  Indeed, the Company's own public shareholders have brought suit against the Company and its Board of Directors (the "Board") to enjoin the buy-out on account of the "grossly inadequate" price being offered for the Company's stock.

4.      As of year end 2005 (the last year in which such records are publicly available), the Plan and its Participants held over $245 million worth of Company stock, making it the Plan's single largest asset.  Defendants – many of whom are Company insiders who approved and are personally benefitting from the buy-out – owe fiduciary duties to the Plan and its Participants which they have breached by authorizing and permitting the Plan and its Participants to sell their holdings of Company stock for amounts that are grossly inadequate and contrary to their best interest.  In particular, Defendants are liable for:

(a)      failing to prudently manage the assets of the Plan by authorizing and permitting the Plan and its Participants to sell Company stock for inadequate consideration under circumstances in which Defendants could

-2-

not reasonably have believed that divestiture of Company stock for such inadequate consideration was prudent;

(b)    failing to properly monitor the Plan's fiduciaries to ensure that they were prudently and loyally serving the interests of the Plan's participants and, in connection therewith, failing to remove and replace fiduciaries whom they knew or should have known were acting disloyally and imprudently with respect to the Plan and its assets;

(c)    failing to provide complete and accurate information to the Plan's participants and beneficiaries and to refrain from providing false information or concealing material information regarding the Plan's investment in Company stock such that participants can make informed decisions with regard to investment options available under the Plan;

(d)    failing to avoid conflicts of interests and to resolve them promptly when they occur by authorizing and permitting the Plan to sell its holdings of Company stock for inadequate consideration to its own fiduciaries and by failing to engage independent fiduciaries and/or advisors who could make independent judgments concerning the Plan's divestiture of Company stock; and,

(e)    engaging the Plan in a statutorily prohibited transaction by allowing the Plan and its Participants to sell Company stock to Plan fiduciaries and allowing such fiduciaries to be unjustly enriched thereby.

5.    Plaintiff alleges that Defendants' breaches of fiduciary duty with respect to the Plan's divestiture of Company stock will result in irreparable harm to the Plan and its Participants and should, therefore, be enjoined.

6.    Because Plaintiff's claims apply to the Plan's Participants as a whole, and because ERISA authorizes plan participants such as Plaintiff to sue for plan-wide relief for breaches of fiduciary duty and/or to seek injunctive relief, Plaintiff brings this action on behalf of himself, the Plan and all participants and beneficiaries of the Plan.

## II.  JURISDICTION AND VENUE

7.    Plaintiff's claims arise under and pursuant to ERISA § 502, 29 USC § 1132.

8.     This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

9.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because this is the district where the Plan was administered, where the breaches took place and where one or more defendants reside or may be found.

### III.  <u>**THE PARTIES**</u>

<u>**Plaintiff**</u>

10.     Plaintiff David Dicrease is a resident of the State of West Virginia, County of Marshall.  Plaintiff is an employee of Kinder Morgan and a Participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).  Plaintiff holds shares of Kinder Morgan stock in his Plan account.

<u>**Defendants**</u>

11.     Defendant Kinder Morgan, Inc. ("Kinder Morgan" or the "Company") is a company incorporated in the State of Kansas with its principle executive offices located at 500 Dallas Street, Suite 1000, Houston, Texas 77002.  The Company is in the energy transportation and storage business.  The Company employs over 8000 people.

12.     Defendant Board of Directors (the "Board") of the Company and each of the individual members of the Board:

a.     Richard D. Kinder ("Kinder"), Chairman of the Board and the Company's Chief Executive Officer;

b.     Edward H. Austin, Jr. ("Austin");

c.     Charles W. Battey ("Battey");

d.     Stewart A. Bliss ("Bliss");

-4-

e.    Ted A. Gardner ("Gardner"), Chairman of the Compensation Committee;

f.    William J. Hybl ("Hybl"), member of the Compensation Committee;

g.    Michael C. Morgan ("M. Morgan");

h.    Edward Randall, III ("Randal"), member of the Compensation Committee;

i.    Fayez S. Sarofim ("Sarofim");

j.    James M. Stanford ("Stanford"), member of the Compensation Committee;

k.    H.A. True, III ("True"), member of the Compensation Committee;

l.    Douglas W.G. Whitehead ("Whitehead").

13.    The Board, Kinder, Austin, Battey, Bliss, Gardner, Hybl, Morgan, Randall, Sarofim, Stanford, True, and Whitehead are referred to collectively as the "Director Defendants."

14.    Defendant Kinder Morgan Fiduciary Committee (the "Committee") is the Plan Administrator.

15.    Defendant Joseph Listengart ("Listengart") is the Company's Vice President and General Counsel. Listengart is the signatory of the Plan's annual report on Form 11-K for the year ended 2005, signed June 29, 2006.

16.    Defendants John Does 1-30 are members of the Committee and, therefore, are fiduciaries of the Plan and/or exercised discretionary authority over the Plan and/or the Fund. Upon information and belief, these other members of the Committee were senior officers and employees with the Company who served on the Committee without additional compensation in the ordinary course of their employment. As a result of their senior positions with the Company,

they knew or should have known all of the facts alleged herein.  The Committee, Listengart and John Does 1-30 are referred to as the "Committee Defendants").

## IV. DESCRIPTION OF THE PLAN

17.     The Kinder Morgan, Inc. Savings Plan (the "Plan") is an employee benefit Plan within the meaning of ERISA § 3(3) and 3(2)(A), 29 U.S.C. § 1002(3) and 1002(2)(A). The purpose of the Plan was to provide retirement benefits to Plan Participants.

18.     The Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan provided for individual accounts for each Participant and for benefits based solely upon the amount contributed to those accounts, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such Participant's account.  Consequently, retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's account.

19.     The Plan is a voluntary contribution Plan whereby Participants make contributions to the Plan ("Voluntary Contributions") and direct the Plan to purchase investments with those contributions from options pre-selected by the Plan's fiduciaries which are then allocated to Participants' individual accounts. The Plan offered a number of equity and fixed income investment options.

20.     At all relevant times, the  Kinder Morgan, Inc. Common Stock Fund (the "Fund") was an investment option for Participants' Voluntary Contributions.  The Fund is comprised of investments in Kinder Morgan common stock.

21.     The Company also made contributions to the Plan on behalf of Participants ("Employer Contributions") which are invested solely in Company stock.

-6-

22.     During 2005, the Director Defendants authorized a total of 6.7 million shares to be issued through the Plan.

23.     As of year end 2005, the Plan held total assets of over $629 million.

24.     As of year end 2005, the Plan held over $245 million in Company stock.

## V. <u>DEFENDANTS ARE FIDUCIARIES</u>

25.     Defendants are fiduciaries of the Plan because:

    (a)     they were so named; and/or

    (b)     they exercised authority or control respecting management or disposition of the Plan's assets; and/or

    (c)     they exercised discretionary authority or discretionary control respecting management of the Plan; and/or

    (d)     they had discretionary authority or discretionary responsibility in the administration of the Plan.

26.     A person is a fiduciary even if a plan does not name him as such or by its terms assign fiduciary duties to him where by his conduct he engages in fiduciary activities.  The test for whether a person (or entity) is a fiduciary is functional and based on actual conduct.  Those who have control over management of a plan or plan assets are fiduciaries regardless of the labels or duties assigned to them by the language of a plan.  Moreover, in order to fulfill the express remedial purpose of ERISA, the definition of "fiduciary" is to be construed broadly.

27.     The Company is a fiduciary in that it managed, administered and operated the Plan and Plan assets and disseminated Plan communications to Participants.  Upon information and belief, the Committee met infrequently and spent very little time on matters relating to administration of the Plan and Plan investments.  Rather, upon information and belief, these jobs

were performed by Company employees acting in the scope of their day to day duties and, in particular, by Kinder Morgan human resources, legal, corporate communications, finance and treasury personnel.

28.     The Director Defendants, as Directors of the Company and/or member of the Board's Compensation Committee, are fiduciaries because they had the fiduciary duty to carry out the acts of the Company and to appoint and monitor the members of the Committee. The Defendant Directors had the power and responsibility to appoint as members of the Committee persons with sufficient education, knowledge and experience to inform themselves as necessary to perform their duties as Committee members, including the duty to evaluate the merits of investment options under the Plan. The Director Defendants also had an ongoing duty to ensure that the persons appointed to the Committee were fully informed and performing their duties properly with respect to the selection of investment options under the Plan and the investment of the assets of the Plan.   The Director Defendants and/or the members of the Board's Compensation Committee, had the fiduciary authority and exercised such authority to approve a discretionary special contribution to each Plan Participants' account.  At its July 2005 meeting, the Compensation Committee approved a special Employer Discretionary Contribution ("EDC") of an additional 1% of base pay to the Plan on behalf of each eligible employee.  The additional 1% EDC is in the form of Company stock.

29.     The Committee was the Plan Administrator.   Based on its status as Plan Administrator, the Committee and its members are responsible for all aspects of the Plan, including selecting and monitoring all Plan investments and investment options.

30.     Defendant Listengart is a fiduciary of the Plan in so far as he is signatory of the Plan's annual report on Form 11-K for the year ended 2005, dated June 29, 2006, and authorized, approved and/or wrote such Plan communications to the Plan's participants.

## VI. SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Buy-Out By Insiders

31.     On May 29, 2006, Kinder Morgan announced that it received a proposal from Richard D. Kinder ("Kinder") along with top management consisting of co-founder Bill Morgan, Kinder Board members Sarofim and M. Morgan, Goldman Sachs Capital Partners, AIG Global Asset Management Holdings Corp., The Carlyle Group and Riverstone Holdings LLC to acquire the remaining shares in the Company that they don't already own for $100.00 per share.

32.     Kinder, along with top management, timed the proposal to freeze out Kinder Morgan's public shareholders in order to capture for themselves Kinder Morgan's future potential without paying an adequate or fair price to the Company's public shareholders.

33.     Kinder timed the announcement of the proposed buy-out to place an artificial lid on the market price of Kinder Morgan's stock so that the market would not reflect Kinder Morgan's improving potential, thereby purporting to justify an unreasonably low price.

34.     Kinder, Sarofim and M. Morgan have access to internal financial information about Kinder Morgan, its true value, expected increase in true value and the benefits of 100% ownership of Kinder Morgan to which Plaintiff and the Plan's Participants are not privy. Kinder, Saroflin and M. Morgan are using such inside information to benefit himself in this transaction, to the detriment of the Kinder Morgan' public stockholders.

**B.    The Company's Public Shareholders Object to the Buy-Out**

35.    Shortly after the announced buy-out, numerous shareholders filed suit to enjoin the transaction, calling the consideration to be paid to the Company's public shareholders as "unconscionable, unfair and grossly inadequate."

36.    These disgruntled shareholders alleged that the consideration was inadequate because:

a.    the consideration did not result from an appropriate consideration of the value of Kinder Morgan and failed to consider the true value of Kinder Morgan through an open bidding or a "market check" mechanism; and

b.    under the terms of the proposal, the public shareholders would receive a poor premium of only 18% compared to closing price of the Company stock the day before the announcement and well shy of the 52-week high of $103.75.

37.    The disgruntled shareholders further alleged that the Company and its Board failed to: (i) take any action to inform themselves of the Company's market value before taking, or agreeing to refrain from taking, action; (ii) act in the interests of the equity owners; (iii) maximize shareholder value; (iv) obtain the best financial and other terms when the Company's independent existence will be materially altered by a transaction; and, (v) act in accordance with their fundamental duties of due care and loyalty.

38.    As a result, the Company's public shareholders alleged that if the transaction is consummated, they would "be deprived of the opportunity for substantial gains which the Company may realize."

**C.**     **The Plan's Fiduciaries Violated ERISA and Breached Their Fiduciary Obligations**

39.     By approving the buy-out of the Company's shares for amounts less than what those shares have historically been and may prospectively be worth, the Plan's fiduciaries have breached their duties to act with single minded devotion to the Plan's Participants' best interests.

40.     Among other things, the Plan's fiduciaries have:

(a)     failed to prudently manage the assets of the Plan by authorizing the Plan and its Participants to sell Company stock for inadequate consideration;

(b)     failed to properly monitor the Plan's fiduciaries to ensure that they were prudently and loyally serving the interests of the Plan's Participants;

(c)     failed to provide complete and accurate information to the Plan's Participants and to refrain from providing false information or concealing material information regarding the Plan's investment and divestiture of Company; and,

(d)     failed to avoid conflicts of interests and to resolve them promptly when they occur by authorizing the Plan to sell its holdings of Company stock for inadequate consideration to its own fiduciaries.

41.     In the face of the above wrongdoing and the obvious conflict of interest in connection therewith, on June 29, 2006, the Plan disclosed that the Director Defendants – charged to act in the best interest of the Plan – had appointed a "special committee" consisting of themselves to determine the propriety and prudence of the buy-out on behalf of the Plan.  Rather than attempt to cure the conflict by retaining a truly independent fiduciary, Defendants have chosen to arrogantly compound their breach.

## COUNT I

### Failure to Prudently Manage the Plans' Assets
### (Breaches of fiduciary duties in violation of ERISA §§ 404 and 405,
### 29 U.S.C. §§ 1104 and 1105, against all Defendants)

42.     Plaintiff incorporates all previous paragraphs as if fully set forth herein.

43.     At all relevant times, as alleged above, Defendants acted as fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), by exercising authority and control with respect to the management of the Plans and the Plans' assets.

44.     ERISA imposes strict fiduciary duties of loyalty and prudence upon the Defendants as fiduciaries of the Plan.

45.     ERISA also imposes explicit co-fiduciary liability on plan fiduciaries.

46.     Under ERISA, fiduciaries who exercise discretionary authority or control over management of the plan or disposition of plan assets are responsible for ensuring that investment options make available to participants under a plan are prudent.  Furthermore, such fiduciaries are responsible for ensuring that assets within the plan are prudently invested.  The Defendants were responsible for ensuring that all investments in Company stock in the Plans were prudent, are liable for losses incurred as a result of such investments if they were imprudent.

47.     The Defendants breached their duties to prudently and loyally manage the Plans assets by authorizing and/or permitting the Plan and its Participants to divest their holdings of Company stock for inadequate consideration.

48.     In addition, Defendants breached their co-fiduciary obligations by, among other failures, knowingly participating in, or knowingly undertaking to conceal the failure to prudently and loyally manage the Plans' assets in exercising their discretion with respect to divesting the Plan and its Participants of their holdings in Company stock for inadequate consideration.

49.     Defendants named in this Count were unjustly enriched by the fiduciary breaches described in this Count.

50.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, Plaintiff and the Plan's Participants, lost a significant portion of their retirement investment.

51.     Pursuant to ERISA § 502(a)(2) & (3), 29 U.S.C. 1132(a)(2) & (3), and ERISA § 409(a), 29 U.S.C. 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT II

**Failure to Appropriately Monitor the Committee Defendants
and Provide them with Accurate Information
(Breaches of fiduciary duties in violation of ERISA §§ 404 and 405,
29 U.S.C. §§ 1104 and 1105, against Kinder Morgan and the Director Defendants)**

52.     Plaintiff incorporates all previous paragraphs as if fully set forth herein.

53.     At all relevant times, the Company and the Director Defendants acted as fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C.  1002(21)(A), with respect to the Plan because they had duties to oversee the Plan Administrator's activities with respect to administering the Plan, appointed and/or was charged with appointing and monitoring the Committee Defendants, and, when necessary, removing them.

54.     The duty to monitor entails both giving information to and reviewing the actions of the Committee Defendants.  Ferro, as the monitoring fiduciary, must therefore:

a.      Ensure that the Committee Defendants possess the needed credentials and experience, or use qualified advisors and service providers to fulfill their duties.  They must be

knowledgeable about the operations of the Plan, the goals of the Plan, and the behavior of the Plan's Participants;

b.      Ensure that the Committee Defendants are provided with adequate financial resources to do their jobs;

c.      Ensure that the Committee Defendants have adequate information to do their job of overseeing the Plan's investments, especially with respect to the largest single asset in the Plan: Company stock;

d.      Ensure that the Committee Defendants maintain adequate records of the information on which they base their decisions and analysis with respect to the Plan's investment options; and,

e.      Ensure that the Committee Defendants report regularly to the monitoring fiduciaries.

55.    The monitoring fiduciary must then review, understand and approve the conduct of the hands-on fiduciaries.

56.    The Company and the Director Defendants had specific monitoring duties, which included, but were not limited to the following:

a.      They were responsible for appropriately monitoring the Committee Defendants, as well as its other officers and employees who performed their fiduciary function for the Plan in the course and scope of their employment;

b.      They were obligated to act with an appropriate prudence and reasonableness in overseeing the Committee Defendants' management of the Plan's assets; and,

c.     They were responsible for ensuring that the Committee Defendants prudently and loyally served the interests of participants, and otherwise satisfied their fiduciary obligations.

57.     Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.   In addition, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets.

58.     The Company and the Director Defendants breached their fiduciary monitoring duties by:

a.     Failing to adequately monitor the Committee Defendants' investment of the Plan's assets, specifically the Plan's divestiture of Company stock for inadequate consideration;

b.     Failing to disclose to the Committee Defendants information concerning the financial condition of the Company that it knew or should have known was material to loyal and prudent investment decisions concerning the Plan's divestiture of Company stock;

c.     Failing to remove fiduciaries whom it knew or should have known were either: (i) not qualified to loyally and prudently manage the Plan's assets; or (ii) suffered under conflicts of interest because of their determination to purchase the Plan's assets for personal profit.;

-15-

d.      Failing to adequately monitor the activities of the Committee Defendants;

e.      Enabling the Committee Defendants to breach their duties particularly with respect to the investment of the Plan's assets in Company stock, and the disclosure of complete and accurate information regarding Company stock;

f.      Making no effort to remedy the fiduciary breaches of the Committee Defendants when they knew or should have had knowledge of said breaches.

59.     The Company and the Director Defendants knew or should have known that the fiduciaries they were responsible for monitoring were imprudently allowing the Plan to sell the Company's shares for inadequate consideration, yet failed to take action to protect the participants from the consequences of the Committee Defendants' failures.

60.     In addition, as a result of its inappropriate practices and implicit knowledge thereof, the Company and the Director Defendants, in connection with their monitoring and oversight duties, were required to disclose to the Committee Defendants accurate information about the financial condition of the Company that they knew or should have known that the Committee Defendants needed to make sufficiently informed decisions.  By remaining silent and continuing to conceal such information from the other fiduciaries, the Company and the Director Defendants breached their monitoring duties under ERISA.

61.     The Company and the Director Defendants are liable as co-fiduciaries because they knowingly participated in the fiduciary breaches by the Committee Defendants, by enabling their breaches and by having knowledge of the Committee Defendants' breaches, yet not making effort to remedy the breaches.

62.     The Company and the Director Defendants were unjustly enriched by the fiduciary breaches described in this Count.

63.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, Plaintiff and the Plan's other participants and beneficiaries, lost a significant portion of their retirement investment.

64.     Pursuant to ERISA § 502(a)(2) & (3), 29 U.S.C. 1132(a)(2) & (3), and ERISA § 409(a), 29 U.S.C. 1109(a), Ferro is liable to restore the losses to the Plans caused by its breaches of fiduciary duties alleged in this Count.

## COUNT III

### Failure to Provide Complete and Accurate Information to the Plans' Participants and Beneficiaries
### (Breaches of fiduciary duties in violation of ERISA §§ 404 and 405, 29 U.S.C. §§ 1104 and 1105, against all Defendants)

65.     Plaintiff incorporates all previous paragraphs as if fully set forth herein.

66.     At all relevant times, Defendants acted as fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C.  1002(21)(A), by exercising authority and control with respect to the management of the Plan and the Plan's assets.

67.     The duty of loyalty under ERISA requires fiduciaries to speak truthfully to participants, not to mislead them regarding the plan or plan assets, and to disclose information that participants need in order to exercise their rights and interests under the plan.

68.     This duty to inform participants includes an obligation to provide participants and beneficiaries of the Plan with complete and accurate information, and to refrain from providing false information or concealing material information regarding the Plan's investments under the Plan.  This duty applies to all of the Plan's investment options, including investments in Company stock.

-17-

69.     The Defendants breached their duty to inform participants by failing to provide complete and accurate information regarding Company stock and its value generally, and by conveying inaccurate information regarding the soundness of selling Company stock.  This failure was particularly devastating to the Plan and its Participants since a substantial portion of the Plan's assets are invested in Company stock.

70.     Defendants are liable as co-fiduciaries because they knowingly participated in and knowingly undertook to conceal the failure of the other fiduciaries to provide complete and accurate information regarding Company stock, despite knowing of their breaches; by enabling such conduct as a result of their own failures to satisfy their fiduciary duties; and by having knowledge of the other fiduciaries' failures to satisfy their duty to provide only complete and accurate information to participants, yet not making any effort to remedy the breaches.

71.     These actions and failures to act were uniform and caused the participants and beneficiaries of the Plan to sell their holdings in Company stock for inadequate consideration at a time when these Defendants knew or should have known that the participants and beneficiaries did not have complete and accurate information concerning their investments in Company stock. Plaintiff and the Plan's Participants relied to their detriment on these Defendants' incomplete and inaccurate statements regarding Company stock.

72.     Defendants named in this Count were unjustly enriched by the fiduciary breaches described in this Count.

73.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, Plaintiff and the Plan's other participants and beneficiaries, lost a significant portion of their retirement investment.

74.     Pursuant to ERISA § 502(a)(2) & (3), 29 U.S.C. 1132(a)(2) & (3), and ERISA § 409(a), 29 U.S.C. 1109(a), Defendants in this Count are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count.

## COUNT IV

### Breach of Duty to Avoid Conflicts of Interest
### (Breaches of fiduciary duties in violation of ERISA §§ 404 and 405, 29 U.S.C. §§ 1104 and 1105, against all Defendants)

75.     Plaintiff incorporates all previous paragraphs as if fully set forth herein.

76.     ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), imposes on a plan fiduciary a duty to loyalty – that is, a duty to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and its beneficiaries.

77.     The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when the occur.  A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

78.     Defendants breached their duty to avoid conflicts of interest and to promptly resolve them when the occurred by authorizing and permitting the Plan to sell all its shares of Company stock to Company insiders, by failing to engage independent fiduciaries and/or advisors who could make independent judgments concerning the Plan's divestiture of Company stock and the information provided to participants and beneficiaries concerning it.  Defendants exacerbated this breach by generally failing to take any steps to ensure that the Plan's fiduciaries did not suffer from a conflict of interest.

79.     Defendants breached their duty to avoid conflicts of interest and to promptly resolve them by:

a.      failing to engage independent fiduciaries and/or advisors who could make independent judgments concerning the Plan's sale of Company stock;

b.      failing to notify appropriate federal agencies, including the Department of Labor, of the facts and transactions which made the Company stock an unsuitable investment for the Plan;

c.      failing to take such other steps as were necessary to ensure that Participants' interests were loyally and prudently served;

d.      with respect to each of these above failures, doing so in order to prevent drawing attention to the Company's true value; and,

e.      by otherwise placing the interests of themselves above the interests of the participants with respect to the Plan's investment in Company stock.

80.     Most egregiously, rather than address their obvious conflict of interest, Defendants have instead elected to exacerbate it by appointing a "special committee" consisting of themselves to determine the propriety and prudence of the buy-out on behalf of the Plan.

81.     Defendants were unjustly enriched by the fiduciary breaches described in this Count.

82.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, Plaintiff and the Plan's other participants and beneficiaries, lost a significant portion of their retirement investment.

83.     Pursuant to ERISA § 502(a)(2) & (3), 29 U.S.C. 1132(a)(2) & (3), and ERISA § 409(a), 29 U.S.C. 1109(a), Defendants in this Count are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count.

## COUNT V

### Violation of ERISA's Prohibited Transactions
### (Violation of ERISA § 406, 29 U.S.C. § 1106, against all Defendants)

84.     Plaintiff incorporates all previous paragraphs as if fully set forth herein.

85.     ERISA § 406 prohibits any transaction between a plan and party in interest, including a plan fiduciary, that involves the sale or exchange of plan assets.

86.     In violation of ERISA § 406, Defendants engaged in self-dealing by authorizing and permitting the sale of $180 million worth of Plan assets, in the form of Company stock, to Defendant Kinder and other Plan fiduciaries

87.     In violation of ERISA § 406, Defendants authorized and permitted the sale of $180 million worth of Plan assets, in the form of Company stock, to third parties for inadequate consideration thus adversely affecting the Plan and its Participants.

88.     Defendant Kinder and others were unjustly enriched by this violation and fiduciary breach of duty.

89.     As a direct and proximate result of this violation, the Plan, Plaintiff and the Plan's other participants and beneficiaries, lost a significant portion of their retirement investment.

90.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. 1132(a)(3), and ERISA § 406(a), 29 U.S.C. 1106, the Director Defendants' actions and the sale of the Plan's holdings of Company stock should be enjoined and Defendants in this Count should be held liable to return any unjust enrichment gained by them as a result of the violations contained herein.

## JURY DEMAND

91.      Plaintiff requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

A.      A Declaration that Defendants are fiduciaries of the Plan;

B.      A Declaration that Defendants breached ERISA fiduciary duties owed to the Plan and Participants;

C.      An Order enjoining the proposed buy-out of Company stock;

D.      An Order compelling Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent divestiture of the Plan's assets;

E.      An Order compelling Defendants to restore to the Plan all profits Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the Participants would have made had Defendants fulfilled their fiduciary obligations;

F.      Imposition a Constructive Trust on any amounts by which Defendants were unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

G.      An Order enjoining Defendants from any further violations of their ERISA fiduciary obligations;

H.      An Order that Defendants allocate the Plan's recoveries to the accounts of all Participants who had any portion of their account balances invested in the Fund maintained by the Plan in proportion to the accounts' losses attributable to the decline in the price of the Fund;

I.      An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

J.      An order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

K.      An Order for equitable restitution and other appropriate equitable monetary relief against Defendants.

DATED:          July 25, 2006                    Respectfully submitted,

**EMERSON POYNTER LLP**

/s/ John G. Emerson
John G. Emerson, SBOT#06602600
830 Apollo Lane
Houston, TX 77058
Telephone: (281) 488-8854
Facsimile: (281) 488-8867

**SCHATZ & NOBEL, P.C.**
Robert A. Izard
20 Church St., Suite 1700
Hartford, CT 06103
Telephone: (860) 493-6292
Facsimile: (860) 493-6290

**SARRAF GENTILE LLP**
Ronen Sarraf
Joseph Gentile
485 Seventh Avenue, Suite 1005
New York, NY 10018
Telephone: (212) 868-3610
Facsimile: (212) 918-7967

**EMERSON POYNTER LLP**
Scott E. Poynter
The Museum Center
500 President Clinton Avenue, Suite 305
Little Rock, AR 72201
Telephone: (501) 907-2555
Facsimile: (501) 907-2556

**Attorneys for Plaintiff**